UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

ALBERT ZHAMAGORTSYAN,

Petitioner,

v.

WARDEN, Adelanto ICE Processing Center, et al.,

Respondents.

Case No. 5:26-cv-04093-DTB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I.

## PROCEEDINGS

On July 21, 2026, petitioner Albert Zhamagortsyan ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Docket No. 1). In the Petition, Petitioner stated he had received a bond hearing on May 14, 2026, at which he was denied bond, and that he received a bond redetermination hearing on July 20, 2026, which was denied. (Id. at 4-6). The Petition alleges the following claims for habeas relief: (1) "Violation of Procedural Process – Constitutionally Inadequate Bond Hearing;" and (2) "Violation of Due Process – Unreasonably Prolonged Detention Without Adequate Process." (Id. at 6-

8).[1] Petitioner seeks, among other things, Petitioner's immediate release from custody or in the alternative, a prompt, individualized and constitutionally adequate bond hearing at which the government bears the burden of justifying Petitioner's continued detention by clear and convincing evidence. (Id. at 13).

On July 29, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 8), accompanied by four exhibits (Docket Nos. 8-1 through 8-4).

On July 31, 2026, Petitioner filed a Reply to the Answer ("Reply"). (Docket No. 9).

On August 17, 2026 (pursuant to the Court's August 7, 2026 Order, see Docket No. 10), Respondents filed a Status Report (Docket No. 11), attached to which were the exhibits submitted to the Immigration Judge in support of the May 14, 2026 bond hearing and the May 14, 2026 Order denying Petitioner bond (Docket No. 11-1) and the exhibits submitted to the Immigration Judge in support of the July 20, 2026 bond redetermination hearing and the July 20, 2026 bond redetermination hearing and the July 20, 2026 Order denying Petitioner bond (Docket No. 11-2).

On August 18, 2026 (pursuant to the Court's August 7, 2026 Order, see Docket No. 10), Respondents filed a Notice (Docket No. 12), attached to which was the transcript of the May 14, 2026 bond hearing (Docket No. 12-1) and the transcript of the July 20, 2026 bond redetermination hearing (Docket No. 12-2).

On August 26, 2026 (pursuant to the Court's August 24, 2026 Order, see Docket No. 13), Petitioner filed a Sur-Reply. (Docket No. 14).

On September 3, 2026 (pursuant to the Court's August 27, 2026 Order, see Docket No. 15), Respondents filed a Response to the Sur-Reply. (Docket No. 16).

---

[1] For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND

Petitioner is a native and citizen of Armenia. (Petition at ¶ 7; see Docket No. 8-3 at 1, 3). On September 17, 2020, Petitioner was lawfully admitted to the United States on a B-1/B-2 nonimmigrant visa. (Petition at ¶ 11, id. at 9; see Docket No. 8-3 at 2-3).

On unspecified dates, Petitioner was arrested for an unspecified offense (the prosecutors declined to file charges) and for driving under the influence (for which he has not been convicted). (Petition at ¶ 15).[2] Petitioner has not suffered any criminal convictions. (Id.; id. at 10).

On April 23, 2026, when Petitioner was at the Victorville courthouse to appear on a pending criminal matter (apparently for the driving under the influence charge) when he was arrested and detained by Immigration and Customs Enforcement ("ICE"). (Petition at ¶¶ 1, 14; id. at 9; see Docket No. 8-3 at 1-3). On an unspecified date, Petitioner was issued a Notice to Appear, charging him with removability under Immigration and Nationality Act ("INA") § 237(a)(1)(B) as a nonimmigrant overstay.[3] (Id. at ¶ 11; see Docket No. 8-3 at 2-3).

Petitioner is married to a United States citizen and is the father of a 3-year-old child, a United States citizen. (Petition at ¶¶ 1, 12; id. at 9). Petitioner is the

---

[2] Although Respondents state that "Petitioner has been arrested in the United States for grand theft auto and [driving under the influence]" (Docket No. 3, citing Docket No. 8-4), the Court is unable to find that Petitioner was arrested for grand theft auto based on an unauthenticated rap sheet.

[3] INA § 237(a)(1)(B) is codified at 8 U.S.C. § 1227(a)(1)(B), which provides that: "Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."

beneficiary of an I-130 visa petition (filed by Petitioner's wife) which was approved on May 21, 2026. (Id. at ¶¶ 1, 13; id. at 9). Petitioner has a pending application of adjustment of status; a hearing was scheduled for August 17, 2026. (Id. at ¶¶ 1, 13; id. at 9).

On May 14, 2026, Petitioner had a bond hearing before an Immigration Judge pursuant to Rodriguez v. Robbins.[4] (Docket No. 12-1 at 1-21). The Department of Homeland Security ("DHS") submitted, among other things, Petitioner's FBI rap sheet[5] and Petitioner's Record of Deportable/Inadmissible Alien (Form I-213)[6] (Docket No. 11-1 at 39-48, 110-18; see Docket No. 12-1 at 3-4). Petitioner submitted several documents, including but not limited to, his birth certificate, his passport and visa pages, his marriage certificate, the naturalization certificate of his spouse, the birth certificate of his child born in the United States, letters of support, his United States Individual Tax Return for 2022, a case summary related to his July 24, 2025 arrest for driving under the influence,[7] photographs of him with family, and notice of his upcoming I-130 interview. (Docket No. 11-1 at 1-38, 49-109; see Docket No. 12-1 at 3-4).

---

4 Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), reversed by Jennings v. Rodriguez, 583 U.S. 281 (2018).

5 The rap sheet states in pertinent part that Petitioner on July 24, 2025 and was charged with a violation of California Vehicle Code § 23152(a), a misdemeanor. (Docket No. 11-1 at 45).

6 The Record of Deportable/Inadmissible Alien states in pertinent part that on July 24, 2025, Petitioner was arrested for driving under the influence and the matter is "Pending Conviction." (Docket No. 112).

7 The case summary states in pertinent part that on July 24, 2025, Petitioner was arrested by the California Highway Patrol for one count of misdemeanor driving under the influence in violation of California Vehicle Code § 23152(a) and one count of misdemeanor driving under the influence of alcohol/.08% or more in violation of California Vehicle Code § 23152(b), that at the time of his arrest he had a blood alcohol level of .12% (first test) and .11% (second test), and that on April 23, 2026, he was arraigned and pleaded not guilty to one misdemeanor count of driving under the influence in violation of California Vehicle Code § 23152(a) and one count of misdemeanor driving under the influence of alcohol/.08% or more in violation of California Vehicle Code § 23152(b). (Docket No. 11-1 at 82-83).

At the hearing, Petitioner's counsel, based on his conversation with Petitioner, described the events surrounding Petitioner's arrest for driving under the influence as follows:

> Yes. He was in Las Vegas. He had a few drinks with his friends the night before. He went to sleep. He got up in the morning, and you can see that he was stopped around 10-something in the morning because he swerved to avoid the bump to not to hit the car. And he was arrested for DUI, but they didn't file the charges. That happened in July, and they didn't file the charges until March. He did go to Court, as a responsible person would. He got out of Court and was encountered by ICE. According to the I-213, he was taken into custody [indiscernible]. He complied with them. He cooperated with ICE officers.

(Docket No. 12-1 at 8).

Counsel for DHS argued that Petitioner is subjected to mandatory detention under the Laken Riley Act based on his March 2024 arrest for grand theft auto. (Docket No. 12-1 at 9-10; see also id. at 11-12). Counsel for DHS also argued that Petitioner is a danger to a community based on his arrest for driving under the influence. (Id. at 10 ["I would argue that on the issue of danger, the DUI is serious. A DUI puts the community at large at risk for operating a motor vehicle while intoxicated."; and "[Petitioner] poses a danger to the community based on criminal activity in the United States, specifically the DUI."]).

Petitioner's counsel argued that the Laken Riley Act did not apply "because [Petitioner] was admitted into the United States with proper documents." (Id. at 11; see also id. at 13, 16-17). Petitioner's counsel also argued that Petitioner is not a danger to the community: "He has not been convicted of any crimes. He was just arrested. Actually, it took them so long. It took them about 7 months to file charges – DUI charges against him. That tells me they didn't consider him such a danger to the community. And also, they haven't even proven that DUI case yet." (Id. at 11).

The Immigration Judge rejected the government's argument that the immigration court does not have jurisdiction because Petitioner is subject to mandatory detention under the Laken Riley Act based on his arrest for grand theft auto. (Docket No. 12-1 at 17-18). The Immigration Judge then denied Petitioner bond, finding that Petitioner is a danger to the community solely based on his July 24, 2025 arrest for driving under the influence:

> The issue before the Court is [Petitioner's] arrest pending prosecution of the case. The Court will note that [Petitioner] was arrested on March 26, 2024, for grand theft auto in violation of California Penal Code § 47(d)(1). And I do have evidence in the record that prosecutors declined to prosecute that offense. The Court also notes that [Petitioner] was arrested in July 24, 2025, for driving under the influence, in violation of California Vehicle Code § 23152(a). The Court will note the [Petitioner] was arraigned and charged on April 23rd, 2026. So, [Petitioner's] counsel is correct that the State of California elected to charge the [Petitioner] definitely sometimes and months later, as they're entitled to do pending attainment of necessary evidence.
>
> On the issue of danger, . . . the Court understand[s] the issues that [Petitioner] has presented through Counsel. Nonetheless, [Petitioner] was arrested for driving under the influence. There was probable cause for that arrest, the State elected to prosecute the [Petitioner] for that case. The Court will note than an arrest for drunk driving indeed constitutes danger to the community. Matter of Choc-Tut, 29 I&N Dec. 48 (BIA 2025). As the Board has repeatedly noted, drunk driving is an extremely dangerous crime and it takes a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars of in property damage every year. Matter of Siniauskas, 27 I&N Dec. 207, 208 (BIA 2018).
>
> The Court understands that [Petitioner], based on [Petitioner's] testimony, perhaps got up the next day after having some alcohol consumption the night prior and elected to drive. That does not mean that he was not inebriated, because a state of inebriation depends on how much alcohol was consumed and when and all those various facts. The fact that the State of California elected to prosecute [Petitioner] for driving under the influence is indicative of the confidence that they have in this case to proceed. Again, [Petitioner] was arrested for DUI,

> with probable cause that the State should have and they had to arrest [Petitioner] for the essential elements of [Petitioner's] charge of DUI. Which is now pending criminal prosecution.
>
> Again, the Court finds that on this record [Petitioner] has failed to establish that he's not a danger to the community based on his criminal record and the fact that he's pending criminal prosecution for DUI. . . . So, with that, [Petitioner] will remain in custody. Bond redetermination is denied.

(Id. at 18-20; see Docket No. 11-1 at 119-37).

Petitioner appealed the bond denial to the Board of Immigration Appeals ("BIA"); that appeal remains pending. (Petition at ¶ 10; id. at 10; see Docket No. 8-1).

Petitioner sought a bond redetermination based on materially changed circumstances, specifically, the May 21, 2026 approval of his I-130 visa petition, a pending application for adjustment of status to lawful permanent resident (with a qualifying joint sponsor and a hearing scheduled for August 17, 2026), and the fact that "the record now reflects the specific circumstances of the single driving-under-the-influence on which the prior danger finding rested – circumstances showing a first-time, non-aggravated incident with no accident and no injury." (Docket No. 11-2 at 4-7, 92-94; Petition at ¶¶ 2, 16).

On July 20, 2026, the Immigration Judge held a bond redetermination hearing. (Docket No. 12-2; Docket No. 11-2 at 1-116).[8] At the hearing, Petitioner's counsel stated an additional changed circumstance, specifically, that the prosecution has offered Petitioner a "wet and reckless" lesser charge. (Docket No. 12-2 at 5, 7). At the conclusion, the Immigration denied the bond redetermination, finding that

[8] Since the Court finds that the Immigration Judge abused his discretion in finding that Petitioner is a danger to the community at the May 14, 2026 bond hearing, as discussed below, the Court will not describe the documents submitted by the parties at the July 20, 2026 bond redetermination hearing.

Petitioner had failed to show a material change in circumstances to overcome the prior finding that he is a danger to the community. (Docket No. 12-2 at 9-10; see Docket No. 8-2; Docket No. 11-2 at 118-19).

Petitioner is being detained at the Adelanto ICE Processing Center in Adelanto, California. (Petition at ¶¶ 6-7, 17; see https://locator.ice.gov/odls/#/results).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised a claim under the Due Process Clause of the Fifth Amendment (see Petition at 6-7, 10-11), which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See e.g., Trump v.

J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

## IV.

## DISCUSSION

As an initial matter, the Court rejects Respondents' contention that Petitioner is subject to mandatory detention under the Laken Riley Act based on his arrest for grand theft auto (see Docket No. 8 at 3; ).[9] As noted above, there is no competent

---

[9] 8 U.S.C. § 1226(c) subjects noncitizens convicted of enumerated crimes to mandatory detention. Denmore v. Kim, 538 U.S. 510, 513 (2003). The Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), enacted on January 29, 2025, amended 8 U.S.C. § 1226(c) to subject additional

evidence in the record that Petitioner was arrested for grand theft auto. As noted above and as Petitioner notes (see Docket No. 9 at 2-3; Docket No. 14 at 3-4), the Immigration Judge at the May 14, 2026 bond hearing specifically rejected Respondents' contention. (Docket No. 12-1 at 18).

Although Respondents rely on the portion of 8 U.S.C. § 1226(c) concerning an arrest for theft (see Docket No. 3, citing 8 U.S.C. § 1226(c)(E)(ii)), Respondents fail to cite critical portions of that statute. Under that statute, an arrest for theft alone is insufficient to subject a noncitizen to mandatory detention. The noncitizen also must be "inadmissible by reason of having committed an offense covered in section 1182(a)(2) of this title," "deportable by reason of having committed an offense covered in section 1227(a)(2)(A)(ii), (A(iii), (B), (C), or D of this title," "deportable under section 1227(a)(2)(A)(i) of this title on the bases of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year," "inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title," or "inadmissible under paragraph 6(A), (6)(C), or (7) of section 1182(a) of this title[.]" 8 U.S.C. § 1226(c)(1)(A)-(E)(i). Since, as noted above, Petitioner is being charged with removal under 8 U.S.C. § 1227(a)(1)(B), which is not one of the provisions cited immediately above, Petitioner is not subject to mandatory detention under the Laken Riley Act, which is what the Immigration Judge found at the May 14, 2026 bond hearing (see Docket No. 12-1 at 18).

Also as an initial matter, the Court rejects Respondents' contentions that the Court lacks jurisdiction under 8 U.S.C. § 1252(g).[10] (Docket No. 8 at 4-5).

---

categories of noncitizens who have had interactions with law enforcement officers, including noncitizens arrested for theft, to detention without a bond hearing. See 8 U.S.C. § 1226(c)(1)(E).

[10] Section 1252(g) provides that: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) including section 2241 of Title 28, or another habeas corpus provision, and section 1361 and 1651 of such title, not court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the

"Section 1252(g) is a narrow provision that applies only to three discrete actions that the Attorney General may take, namely his 'decision or action' to "commence proceedings, adjudicate cases, or execute removal orders.'" Singh v. Warden of the Desert View Detention Facility, Adelanto, California, Case No. 5:26-cv-00897-DMK, 2026 WL 2276888, at *2 (C.D. Cal. Aug. 6, 2026) (quoting Section 1252(g)). "Instead of 'sweep[ing] in any claim that can technically be said 'to arise from' the three listed actions,' the provision 'refer[s] to just those three specific actions themselves.'" Ibarra-Perez v. United States, 154 F.4th 989, 996 (9th Cir. 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)) (plurality opinion).

Here, Petitioner is not asking the Court to review a decision to commence proceedings, adjudicate cases, or execute removal orders. See Poot v. Mullin, et al., Case No. 5:26-cv-03321-CTS, 2026 WL 2659590, at *3 (C.D. Cal. Sept. 9, 2026) ("[A] challenge to detention during the pendency of removal proceedings is *not* a challenge to the commencement of those removal proceedings, or to the adjudication of a case or execution of a removal order.") (italics in original). Moreover, Respondents have not cited any authority holding that Section 1252(g) precludes a court from hearing a habeas petition challenging the constitutionality of a bond hearing. In sum, the Court does not lack jurisdiction over the Petition.

Finally, also as a preliminary matter, the Court rejects Respondents' contention that Petitioner has failed to exhaust available administrative remedies (Docket No. 8 at 5-6; Docket No. 16 at 2-4).

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Exhaustion aids "judicial review by allowing the appropriate development of a factual record in an expert

---

Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

forum; conserve[s] the court's time because of the possibility that the relief app[lied for may be granted at the administrative level; and allow[s] the administrative agency an opportunity to correct errors in the course of administrative proceedings." Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam). Since the exhaustion requirement is judicially created, the failure to exhaust does not deprive a federal court of jurisdiction. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50 (1995). Furthermore, the exhaustion requirement can be waived in Section 2241 cases since it is not a "jurisdictional prerequisite." Ward, 678 F.3d at 1045 (citation omitted). Exhaustion may be waived "if pursuing those [administrative] remedies would be futile." Id. (alteration in original) (citation omitted). Courts also have discretion to waive the exhaustion requirement where administrative remedies are inadequate or not efficacious, irreparable injury would result, or the administrative proceedings would be void. See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted). A "key consideration" in exercising such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme." Id. (quoting Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir. 1990)).

Here, waiver of the exhaustion requirement is warranted because Petitioner is challenging the constitutional adequacy of the bond hearing and the bond redetermination hearing. See Vasquez (A# XXX-XX7-182) v. Warden, California City Immigration Processing Center, Case No. 1:26-cv-04482 DJC SCR, 2026 WL 2676859, at *3 (E.D. Cal. Sept. 11, 2026); Poot2026 WL 2659590, at *5; Heboud v. Blanche, Case No. 5:26-cv-03484-KS, 2026 WL 2494985, at *3 (C.D. Cal. Aug. 24, 2026).

**A. Habeas Relief is Warranted on the First Claim in the Petition.**

In the first claim alleged in the Petition, Petitioner alleges that his bond hearing under 8 U.S.C. § 1226(a) was constitutionally inadequate because the

Immigration Judge found that Petitioner is a danger to the community based on a driving under the influence arrest, when the charge "remains pending and is anticipated to resolve as a lesser, non-DUI disposition[.]" According to Petitioner, "[a] deprivation of liberty resting on unproven allegations, without meaningful consideration of Petitioner's substantial equities – a United States citizen spouse and child, an approved visa petition, and a fixed residence – does not satisfy due process." (Petition at 6-7, 10-11; see Docket No. 9 at 5; Docket No. 14 at 2, 5-7).

The question is whether the Immigration Judge's finding that Petitioner is a danger to the community based on his July 24, 2025 arrest for driving under the influence was an abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion."); Vasquez (A# XXX-XX7-182) v. Warden, California City Immigration Processing Center, Case No. 1:26-cv-04482 DJC SCR, 2026 WL 2676859, at *3 (E.D. Cal. Sept. 11, 2026); Poot, 2026 WL 2659590, at *6 ("An IJ's determination that a detainee poses a danger to the community or a flight risk is a mixed question of law and fact that may be reviewed for abuse of discretion.") (citing Martinez, 124 F.4th at 783). "Under abuse of discretion review, the Court 'cannot reweigh evidence,' but instead determines whether the immigration 'applied the correct legal standard.'" Poot, 2026 WL 2659590, at *6 (quoting Martinez, 124 F.4th at 785).

To determine whether a noncitizen is a danger to the community, an Immigration Judge may consider the following nine factors: "(1) [W]hether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the

extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry into the United States." Martinez, 124 F.4th at 783 (quoting In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)). "'The Guerra factor most pertinent to assessing dangerousness' is 'the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'" Singh v. Holder, 638 F.3d 1196, 1206 (9th Cir. 2011) (quoting In re Guerra, 24 I. & N. Dec. at 40). "An 'IJ's failure to consider or apply any of the Guerra factors and decision to instead rely on . . . evidence that 'bear little if any relevance' to [the petitioner's] risk of flight [or danger], while seemingly ignoring all evidence in [the petitioner's] favor constitutes a misapplication of the legal standard to the facts.'" Vasquez (A# XXX-XX7-182), 2026 WL 2676859, at *4 (quoting Perez Velasquez v. Bondi, Case No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026)); see also Poot, 2026 WL 2659590, at *7 ("[A]n immigration agency 'abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [the decision].'") (quoting Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006)).

Here, the Immigration Judge at the May 14, 2026 bond hearing abused his discretion by failing to correctly apply the "dangerousness" standard "to a given set of facts." Martinez, 124 F.4th at 783 (citation omitted). The Immigration Judge did not consider meaningful evidence relevant to Guerra's criminal record factor as applied to Petitioner, specifically, the absence of any property damage or injuries to persons during the incident resulting in his arrest (see Docket No. 12-1 at 8), the absence of any prior convictions, or his low blood alcohol levels at the time of his arrest (.12%, first test, and .11%, second test) (Docket No. 11-1 at 82). Instead, the

Immigration Judge primarily relied on the BIA decisions in Matter of Choc-Tut, 29 I. & N. Dec. 48 (BIA 2025) and Matter of Siniauskas, 27 I & No. Dec. 207 (BIA 2018) to find that Petitioner is a danger to the community. (Docket No. 12-1 at 19).

Although the BIA in Choc-Tut stated that "[d]riving under the influence represents a grave danger to the community," 29 I. & N. Dec. 48, 50 (citing Matter of Siniauskas, 27 I. & N. Dec. 207, 209), and although the BIA in Siniauskas stated that "'[d]runk driving is an extremely dangerous crime,'" 27 I. & No. Dec. 207, 208 (citation omitted) and that "[i]t takes a 'grisly toll on the Nation's roads, claiming thousands of lives, injury many more victims, and inflicting billions of dollars in property damage every year,'" id. (citation omitted), those cases are materially distinguishable from Petitioner's case. In Choc-Tut, the petitioner was arrested three times in a one-month period and had a blood alcohol level of over .201% in two of those arrests. 29 I. & N. Dec. 48, 50. Finding that the petitioner's "repeated arrests for traffic while under the influence, including a second arrest just 18 days after his first arrest for similar behavior, indicates a strong disregard for public safety," the BIA overturned the Immigration Judge's order granting the petitioner release on $4,000.00 bond. Id. In Siniauskas, the petitioner had three driving under the influence convictions between 2006 and 2007 and was arrested for driving under the influence in 2017, and two of the prior convictions and the most recent arrest involved accidents. 27 I. & N. 207. 208-10. Based on the petitioner's "multiple convictions for driving under the influence from [2006 and 2007] and a recent arrest for the same conduct, which undermines his claim that he has been rehabilitated," the BIA found that the petitioner had not shown that he is not a danger to the community and vacated the Immigration Judge's decision ordering the petitioner's release on bond. Id. at 207, 210. Here, the Immigration Judge improperly relied on blanket statements from Choc-Tut and Siniauskas without considering or discussing any distinguishable facts underlying Petitioner's single arrest for driving under the

influence. See Vasquez (A# XXX-XX7-182), 2026 WL 2676859, at *4 ("The IJ's blanket application of Choc-Tuc without any meaningful discussion of the obviously distinguishable facts underling [the petitioner's] single reckless conviction demonstrates his misapplication of Guerra's criminal record factor.").

Therefore, the Court finds that the Immigration Judge's finding that Petitioner is a danger to the community was an abuse of discretion. Accordingly, the Court finds that Petitioner's inadequate bond hearing violated his right to due process under the Fifth Amendment.

"'Upon determining that an [immigration judge] provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [] or ordered that [the respondents] provide petitioner with a new constitutionally adequate bond hearing.'" Gonzales Reyes v. Rios, Case No. 5:26-cv-03830-JGB-DFM, 2026 WL 2190830, at *6 (C.D. Cal. July 28, 2026) (quoting Perez Velasquez v. Bondi, Case No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases)).

Under the circumstances, the Court concludes that the appropriate remedy is Petitioner's immediate release from custody. See Vasquez (A# XXX-XX7-182); Poot, 2026 WL 2659590, at *10; Gonzalez Reyes, 2026 WL 2190830, at *7; Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026).

For the reasons set forth above, the Petition is GRANTED, and a writ shall issue ordering Petitioner's immediate release from custody.[11]

/ / /

/ / /

/ / /

/ / /

---

[11] The Court's determination that Petitioner is entitled to habeas relief on his due process claim renders it unnecessary for the Court to address the other claim alleged in the Petition.

## V.

## ORDER

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Albert Zhamagortsyan (A# 220-142-720), from custody, subject to the same conditions (if any) that Petitioner was subject to at the time he was arrested and detained, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: September 24, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE